**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

ANGELA LEAZIER,                                    :

       Plaintiff,                          :          Civil Action No.

       v.                                  :

ALLEVA FUNERAL HOME, INC.,           :
SERVICE CORPORATION
INTERNATIONAL, INC.;                        :
SCI SHARED RESOURCES, LLC

                               :

       Defendants.

**COMPLAINT**

## I. NATURE OF THE ACTION

1. This is an action for damages and equitable relief arising from Defendants' unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq.

2. Plaintiff was subjected to sexual harassment, a hostile work environment, retaliation, and constructive discharge/termination because of her sex and protected activity.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f).

4. This Court has supplemental jurisdiction over Plaintiff's state law claims under the PHRA pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this District because the unlawful employment practices occurred in Pennsylvania.

1

## III. PARTIES

6.   Plaintiff Angela Leazier is an adult individual residing in Parkesburg, Pennsylvania.

7.   Defendant Alleva Funeral Home, Inc. ("Alleva") is a corporation registered to do business in Pennsylvania with a primary place of business in Paoli, Pennsylvania and a corporate address of 1929 Allen Parkway, Houston, TX 77019.

8.   Defendant Service Corporation International ("SCI") is an out-of-state Texas corporation with its principal executive offices located at 1929 Allen Parkway, Houston, TX 77019, and was put on actual notice of these claims via the administrative process.

9.   Defendant SCI Shared Resources, LLC ("SCI Shared Resources") is an out-of-state Delaware limited liability company with its principal executive offices located at 1929 Allen Parkway, Houston, TX 77019, and acts as the administrative and human resources arm for the enterprise.

10. Defendant Alleva is an employer within the meaning of Title VII and the PHRA which, upon information and belief, operates as a single employer, joint employer, and integrated enterprise with parent company SCI and its administrative subsidiary SCI Shared Resources. These entities share common ownership, interrelated operations, common management, and centralized control of labor and human resource relations, including the standardized employee handbooks, payroll administration, and personnel policies that governed Plaintiff's employment.

## IV. ADMINISTRATIVE EXHAUSTION

11. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and dual-filed with the Pennsylvania Human Relations Commission ("PHRC").

2

12. Plaintiff has satisfied all prerequisites to suit by initiating the administrative process under Title VII and the PHRA.[1]

13. The EEOC issued a Notice of Right to Sue on February 27, 2026.

14. This Complaint is timely filed within 90 days of receipt of that Notice.

## V. FACTUAL ALLEGATIONS

15. Plaintiff was hired by Defendants as a Funeral Director Intern on or about August 20, 2024. She relocated for this position and was committed to building a career in the funeral services industry.

16. Shortly after beginning her employment, Plaintiff was subjected to unwelcome sexual harassment by Stephen Alleva ("Alleva"), an officer and a management figure within the company.

17. At all relevant times, Alleva was a supervisor and/or agent of Defendants with actual or apparent authority over Plaintiff's employment, or whose actions were ratified by Defendants.

18. Alleva's conduct included repeated and escalating inappropriate physical and verbal behavior, including but not limited to:

- Running into Plaintiff's body in a suggestive manner

- Asking Plaintiff if she "had abs" and requesting to see her stomach

- Asking if she "needed [his] help" while she was entering the bathroom

- Playfully kicking Plaintiff and grabbing or pushing her arms

- Making repeated sexual jokes and comments

---

[1] Plaintiff acknowledges that the PHRC has exclusive jurisdiction over her PHRA claims for a period of one year after the filing of her administrative charge. To the extent necessary, Plaintiff respectfully requests that this Court stay those claims until such time as they may properly proceed.

19. Because of Alleva's perceived authority and influence within the funeral home, Plaintiff feared retaliation and initially did not report the conduct.

20. A coworker acknowledged Alleva's inappropriate behavior toward Plaintiff and warned her not to report it, stating that "family will look out for each other."

21. In or around November 2024, while walking up a staircase at work, Alleva followed closely behind Plaintiff.

22. Without consent, Alleva engaged in unwanted and invasive physical contact with Plaintiff's body with sufficient force to push her forward.

23. Plaintiff immediately turned and told Alleva to "knock it off," but Alleva continued to touch her two additional times before reaching the top of the stairs.

24. Later that month, while Plaintiff was using a copier, Alleva approached from behind and forcefully groped Plaintiff.

25. Plaintiff felt shocked, violated, and distressed by this conduct.

26. Immediately after this incident, Plaintiff called her boyfriend while alone in a company vehicle because of the emotional impact of the assault.

27. On or about December 19, 2024, Plaintiff reported the harassment to her supervisor, Stacey Wolverton, during a scheduled performance review.

28. Rather than addressing the misconduct, Wolverton minimized the behavior and stated, in substance, that Plaintiff needed to "take responsibility" for not reacting more aggressively.

29. Plaintiff explicitly requested that her complaint remain confidential due to fear of retaliation.

30. Despite this request, Wolverton disclosed Plaintiff's complaint to Alleva the very next day, describing the disclosure as a "game time decision."

31. Immediately following the disclosure, Alleva began acting aggressively in the workplace, including slamming doors and displaying visible anger.

32. On or about December 23, 2024, Alleva confronted Plaintiff in a private office.

33. During this meeting Alleva stated he was upset that Plaintiff had "lodged a complaint" against him. He denied wrongdoing and claimed Plaintiff "misunderstood his intent."

34. He stated that if Plaintiff did not rescind her complaint, he would "have to defend [him]self."

35. He further emphasized his influence in the funeral industry, stating he "knows everybody" which Plaintiff reasonably interpreted as threats to her career.

36. Alleva then told Plaintiff she needed to decide whether she "wanted to keep [her] career."

37. While Plaintiff was visibly upset and crying, Alleva summoned Wolverton into the room.

38. Together, Alleva and Wolverton pressured Plaintiff into rescinding her complaint.

39. Plaintiff rescinded the complaint under duress.

40. Following this incident, Plaintiff became physically ill due to stress and fear of returning to work.

41. Defendants placed Plaintiff on unpaid leave and required her to obtain a doctor's note to return.

42. Plaintiff incurred out-of-pocket expenses for therapy during January and February 2025.

5

43. On or about January 16, 2025, Plaintiff reported the harassment to regional HR representative Rene Guillory.

44. Guillory responded dismissively, stating in substance that Plaintiff must have said something to invite the conduct and that Plaintiff was "overreacting." She further stated that the situation was merely "growing pains" and that funeral service "might not be a good fit" for Plaintiff.

45. Guillory failed to take prompt corrective action.

46. Instead, Guillory disclosed Plaintiff's complaint to Alleva and Wolverton.

47. On or about February 28, 2025, Defendants informed Plaintiff that she would be reassigned to Ott Funeral Home.

48. This reassignment increased Plaintiff's commute by approximately 64 miles, resulting in a commute exceeding three hours per day.

49. The reassignment was materially adverse and imposed a significant burden on Plaintiff's ability to continue her employment.

50. Plaintiff notified Defendants that the reassignment was not feasible without relocation assistance.

51. Defendants refused to provide any accommodation or assistance.

52. Upon information and belief, Defendants had already begun planning Plaintiff's termination based on her anticipated inability to comply with the reassignment.

53. Defendants' actions, including failure to address harassment, disclosure of Plaintiff's complaint, coercion to rescind, unpaid leave, and reassignment to a distant location, created working conditions that were intolerable to a reasonable person.

6

54. These actions were taken after and because of Plaintiff's complaints of sexual harassment.

55. As a result of these conditions, Plaintiff was effectively forced out of her position.

56. Plaintiff's inability to report to the distant reassigned location was a direct consequence of Defendants' retaliatory conduct.

57. Defendants created intolerable conditions culminating in Plaintiff's termination on or about March 11, 2025.

58. Defendants terminated Plaintiff's employment as she could not report to the reassigned location.

59. This stated reason was pretextual.

60. Defendants terminated Plaintiff in retaliation for her complaints of sexual harassment and to protect Alleva from investigation.

61. To the extent Defendants contend Plaintiff resigned or abandoned her position, Plaintiff alleges that any separation constituted constructive discharge in violation of Title VII and the PHRA.

62. Plaintiff learned that other female employees had previously quit or been reassigned due to similar conduct by Alleva.

63. Defendants had actual or constructive knowledge of Alleva's conduct and failed to take appropriate remedial action.

64. As a direct result of Defendants' conduct, Plaintiff suffered emotional distress and anxiety, loss of income and career opportunities; medical expenses and damage to professional reputation.

7

**VI. CLAIMS FOR RELIEF**

**COUNT ONE – SEX DISCRIMINATION / HOSTILE WORK ENVIRONMENT (TITLE VII)**

65. Plaintiff incorporates all prior paragraphs.

66. Plaintiff was subjected to severe or pervasive sexual harassment.

67. At all relevant times, Alleva was a supervisor and/or agent of Defendants with authority over Plaintiff's employment, and his harassment culminated in tangible employment actions affecting Plaintiff.

68. In the alternative, Defendants knew or should have known of the harassment and failed to take prompt and appropriate remedial action.

69. Defendants ratified and/or condoned the unlawful conduct through their managers and human resources personnel, including by disclosing Plaintiff's complaint to the harasser, minimizing the misconduct, and failing to take corrective action.

70. The harassment altered the terms and conditions of her employment.

71. Defendants failed to take prompt remedial action.

**COUNT TWO – RETALIATION (TITLE VII)**

72. Plaintiff incorporates all prior paragraphs.

73. Plaintiff engaged in protected activity by reporting sexual harassment to her supervisors and Human Resources.

74. Defendants subjected Plaintiff to materially adverse actions, including, but not limited to, disclosure of her complaint to the alleged harasser and coercion to rescind her complaint.

75. Defendants' actions also included placing her on unpaid leave and reassigning her to a distant location without assistance.

76. Defendants' actions would dissuade a reasonable worker from making or supporting a charge of discrimination.

77. Defendants' retaliatory conduct ultimately forced Plaintiff from her employment and culminated in the termination of her employment.

78. Defendants either intended to force Plaintiff from her position or acted with knowledge that its actions would have that effect.

79. Plaintiff's inability to report to the reassigned location was a direct and foreseeable result of Defendants' conduct.

80. On or about March 11, 2025, Defendants terminated Plaintiff's employment stating that she failed to report to the reassigned location.

81. To the extent Defendants contend Plaintiff resigned or abandoned her position, Plaintiff alleges that any separation constituted constructive discharge.

82. Defendants' actions constitute a constructive discharge and/or termination in violation of Title VII.

83. There is a causal connection between Plaintiff's protected activity and the adverse actions, including close temporal proximity and direct evidence of retaliatory intent.

**COUNT THREE – VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT (PHRA)**

84. Plaintiff incorporates all preceding paragraphs.

85. Defendants' conduct as described above constitutes unlawful discrimination on the basis of sex, hostile work environment, retaliation, and constructive discharge/termination in violation of the PHRA, 43 P.S. § 951 et seq.

86. Defendants, through their supervisors, agents, and employees, subjected Plaintiff to unwelcome harassment because of her sex.

87. Defendants knew or should have known of the harassment and failed to take prompt and appropriate remedial action.

88. Defendants further retaliated against Plaintiff for engaging in protected activity.

89. Defendants' conduct created intolerable working conditions and resulted in Plaintiff's constructive discharge and/or termination.

## VII. DAMAGES

90. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered the damages described below, including but not limited to lost wages and benefits; emotional distress; reputational harm; and other liquidated and compensatory damages, as well as fees and costs.

91. Defendants' conduct was intentional, willful, and done with reckless indifference to Plaintiff's rights.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests:

    a.  Back pay and front pay

    b.  Reinstatement

    c.   Compensatory damages

    d.   Punitive damages

    e.   Attorneys' fees and costs

    f.   Any other relief the Court deems appropriate

## IX. JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted by,

s/ *Kay Hennessy Seven*

_____

KAY HENNESSY SEVEN, ESQUIRE
I.D. NO. 77262
Hennessy Law, P.C.
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
Phone: 267-344-3600
kay@hennessylawfirm.com
Counsel for Plaintiff

May 18, 2026

**<u>VERIFICATION</u>**

I, Angela Leazier, hereby verify that I am the Plaintiff in the above matter and under penalty of perjury applicable under the laws of the United States that the factual averments in the attached Complaint are true and correct to the best of my personal knowledge, information and belief.

ID 26BgHohC4Ys3p5SsHrTY1Gby

_____

Angela Leazier

5/18/2026